The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, v. Peoples Trust and Savings Bank of Streator. Willis E. Gochanour, Appellee, v. J. Weston Essington, Receiver of Peoples Trust and Savings Bank of Streator, Appellant.

Gen. No. 8,788.

Opinion filed July 6, 1934.

Geo. V. B. Weeks, for appellant.

Arthur H. Shay, for appellee.

Mr. Justice Huffman delivered the opinion of the court.

This appeal is prosecuted by J. Weston Essington, receiver of the Peoples Trust and Savings Bank of Streator, Illinois, from the decree of the circuit court of LaSalle county, entered in favor of appellee herein, ordering appellant, as receiver, to deliver up to appellee certain securities and also one certain promissory note in the principal sum of $3,000. The securities, other than the $3,000 note, were admitted by appellant to belong to appellee, and we are not concerned in this appeal with the disposition as made by the trial court of those securities. The $3,000 note is the item in controversy in this appeal.

The facts out of which the controversy over this note arose are substantially as follows: Lena Gochanour was the wife of appellee Willis E. Gochanour. They resided together at Ransom, Illinois. The wife had borrowed $2,500 at the Peoples Trust and Savings Bank of Streator, Illinois, executing a note for that

amount, to which she had signed both her name and that of her husband. With this note she had placed with the bank as collateral security therefor, the $3,000 note in question.

When appellant took charge of this bank as receiver thereof, he found the aforesaid $2,500 note among the assets, together with the $3,000 note which had been pledged by Mrs. Gochanour as above. Appellee filed his petition in the circuit court of LaSalle county, setting up that he was the owner of certain securities and the $3,000 note; that they were in possession of appellant as the receiver of said bank; that they were appellee's sole and separate property; that appellant had no right, title or interest in or to any of said items; that he had refused to surrender them to appellee upon demand; and prayed that said receiver be ordered and directed to deliver up the items of securities including the $3,000 note to appellee, forthwith.

Appellant urges three reasons for the reversal of this case. First, that Mrs. Gochanour in delivering the $3,000 note to the bank as collateral security, was acting as the agent of appellee; second, that appellant as receiver, is an innocent holder of the $3,000 note even though the bank itself was not such a holder; and third, that the $3,000 note being a negotiable instrument, negotiable by delivery, the bank became holder in due course thereof, and that therefore the receiver is entitled to retain possession of the same as a pledge until the $2,500 note is paid.

Mrs. Gochanour had been married prior to her marriage to appellee. She had two children by the former marriage, Charles Schaefer and George Schaefer.

The $2,500 note was signed by Mrs. Gochanour at the bank in Streator, in the presence of W. H. Jones, who was assistant cashier of said bank and who had occupied that position for 23 years. The note was signed by Mrs. Gochanour in the following manner: "Willis Gochanour, Mrs. Willis Gochanour" and set

out therein the $3,000 note pledged as collateral security.

Appellee testified that he knew nothing about the $2,500 note executed by his wife and to which she had signed his name; that the $3,000 note was executed by Christian and Elizabeth Richard; that it belonged to him absolutely and that he kept it in a little metal box in his home with his other valuable papers. He denies that his wife had any authority to draw checks against his account or to sign his name to notes and borrow money thereon. He claims he had no knowledge his wife had extracted the $3,000 note from the metal box at his home where he kept it. He denies that he received any of the $2,500, knew anything about the transaction, or in any way authorized or ratified it. He states that he does not know how the $3,000 note came into the possession of the Peoples Trust and Savings Bank, as it was his own property and kept at home by him in his box.

The wife testified for appellant. She admitted that she had no authority to sign appellee's name to checks or notes at the bank, and that such checks as she signed were signed without his authority and that she received the money. She further admitted that she signed both her name and her husband's name to the $2,500 note, and that appellee did not know anything about it; that the transaction occurred without his knowledge and that she received the money.

Lucille Lacey, the daughter of Lena and Willis Gochanour, testified as a witness for appellee. She was with her mother the day she went to the bank to borrow the $2,500. She states that her mother talked to Mr. W. H. Jones at the bank, and acquainted him with her desire to borrow $2,500; that her mother stated to Mr. Jones she only wanted to borrow the money for a very short time and wanted to borrow it for her son, George Schaefer. This witness states that

Mr. Jones asked her mother if appellee would sign the note for the money, and that her mother said she did not want appellee to know anything about it, whereupon Jones asked her mother what she had to borrow the money on that she could give as collateral security, to which her mother responded, that she did not have anything. The witness states that Jones then mentioned the $3,000 note and asked if Mrs. Gochanour could put it up as security for the money, to which her mother replied that the note was not hers but that she could easily produce it if he wanted her to. The witness states Jones then said that Mrs. Gochanour would have to sign appellee's name to the note; and that the note was then signed by her mother as directed by Jones, her mother first signing appellee's name to the note and then signing her own. The mother did not receive the money at this time as she had not yet produced the security mentioned by Jones. She was advised that she would have to produce the security before she received the money.

The security to be produced was what is commonly referred to by the witnesses as the Richard note, which we have designated herein as the $3,000 note, it being the note in controversy. This witness knew about the note being kept at home in a box where she says her father kept his papers, and that the note was there at that time. The witness details further conversation had between Jones and her mother with reference to the transaction. She states that this was the first time she ever knew of her mother signing her father's name to a note. She states that she knew her mother had drawn checks for small amounts in payment for groceries, and that she had one time drawn a check to this witness for $250, but that the witness' father had directed them to draw this check for the benefit of said daughter. This witness further states that she knew her mother did not own the $3,000 note.

Lester Gochanour testified for appellee regarding a conversation about this matter that he had with Jones regarding the $3,000 note, wherein he claims Jones said, in substance, that when Mrs. Gochanour borrowed the $2,500 from the bank and put up the $3,000 Richard note as collateral, that he, Jones, then knew the note was the property of appellee, but he did not think that she had "purloined it."

Mr. W. H. Jones, on behalf of the appellant, claimed that Mrs. Gochanour brought most of the deposits to the bank from time to time, which were placed in the account of appellee; that she wrote checks against his account; that notes had been in that bank wherein appellee and his wife were the signers and that appellee signed his own name. This witness claimed, however, there were two exceptions where appellee did not sign his own name to notes, namely, a note in the sum of $150 (of which appellee denies any knowledge) and the $2,500 note as made by appellee's wife. He states that appellee was not present when the $2,500 note was executed, that Mrs. Gochanour negotiated the loan and stated she would need it for only a short time. He does not remember whether Mrs. Gochanour stated that she had authority to sign appellee's name. He states that she delivered the $3,000 note and received $2,500 upon a note executed by her. This $2,500 note was renewed once by Mrs. Gochanour at a time when appellee was not present and there is no evidence that any statement regarding this renewal was sent to appellee. This witness became acquainted with appellee about 1912. Appellee at that time was engaged in farming. Several years prior to this proceeding, appellee had lived in Ransom, where he delivered mail from the depot to the postoffice. He was 69 years of age and not in good health. It appears from the evidence of Mr. Jones that after appellee moved to Ransom, he did not come to Streator so often as he had

previously done, and that he usually sent his deposits to the bank by his wife. The witness states that during these years the wife would occasionally sign appellee's name to checks. He denies that he knew what Mrs. Gochanour did with the $2,500, or that she gave it to George Schaefer, whom he understands to be her son by a former marriage. He does not remember what conversation he had with appellee's wife in regard to the making of the $2,500 note. He does not remember who was with Mrs. Gochanour at the time. He states that his recollection is that the money was paid in cash. Neither does he remember the conversation about the $3,000 note.

We do not consider appellant's first objection as to the question of agency between appellee and his wife well taken. The evidence fails to establish agency. The husband denies it. The wife as a witness for appellant admits the want of agency, and Jones as a witness for appellant makes no such showing.

With regard to appellant's second contention that the receiver takes title to the pledged security as an innocent holder even though the bank was not such a holder, we cannot agree. There was no fraud entering into this transaction in an effort to bolster up the credit or financial standing of the bank, and therefore the rule urged by appellant does not apply in this case, and the receiver takes no better title than the bank had. *Hunt v. Green,* 271 Ill. App. 228, 234.

The appellant's third contention that the pledged collateral was negotiable by delivery, and the bank having parted with valuable consideration therefor, that it was entitled to retain possession of the same as a pledge until the $2,500 note was paid, we cannot agree with under the facts in this particular case. Jones was a general agent of the bank for the transaction of its business, and his information concerning this transaction was the information of the bank.

*First Nat. Bank of Kewanee v. Wine,* 255 Ill. App. 578; *Hunt v. Green, supra.*

A careful examination of this record convinces us that the bank had knowledge that appellee knew nothing about this transaction and that his wife did not want him to know anything about it; that the wife did not have any collateral security to pledge, and so stated. A pledgee who has either actual or constructive notice of outstanding rights or equities affecting the pledged property, before he delivers up anything of value in consideration therefor, is not a bona fide holder of the pledged property. 49 C. J. 929.

Where a negotiable paper is pledged by one not its owner and money is paid out thereon by a pledgee who knows that the pledgor is not the owner thereof, the pledgee must give up such paper to the real owner. *Perth Amboy Mut. Loan Homestead & Bldg. Ass'n v. Chapman,* 178 N. Y. 558. Where one taking negotiable paper, by way of collateral security, has knowledge that the person offering it has no authority to pledge it, his taking of the same as security for a loan, imparts no title as against the real owner. Jones on Collateral Securities, 124.

In this case we think the evidence establishes the fact that the bank had knowledge this note belonged to appellee and not to his wife, and the trial court properly held him to be entitled to the possession of the same.

The decree of the trial court is affirmed.

*Decree affirmed.*